Marshall **HELMBERGER**, Relator,

v.

**JOHNSON CONTROLS, INC.,** Respondent,

**Office of Administrative Hearings,** Respondent,

**Architectural Resources, Inc.,** Respondent.

No. A12–0327.

Court of Appeals of Minnesota.

Oct. 9, 2012.

---

Mark R. Anfinson, Minneapolis, MN, for relator.

David L. Lillehaug, Fredrikson & Byron, Minneapolis, MN, for respondent Johnson Controls.

Steven R. Lindemann, Leonard, Street & Deinard, Minneapolis, MN, for respondent Architectural Resources.

Considered and decided by STAUBER, Presiding Judge; CHUTICH, Judge; and HARTEN, Judge.*

## OPINION

STAUBER, Judge.

On certiorari appeal from a decision by an administrative-law judge (ALJ) dismissing his complaint against respondent-contractor under the Minnesota Government Data Practices Act (MGDPA), relator argues that the ALJ erred by concluding that the contractor was not performing a "governmental function" under the MGDPA when it provided management, construction, and architectural services to a school district. Because we conclude that the contractor was performing a "governmental function" within the meaning of the MGDPA, we reverse and remand.

## FACTS

In February 2010, Independent School District 2142 (school district) entered into

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

two contracts with respondent Johnson Controls, Inc. (JCI) for project management, construction, and architectural services relating to the construction of two new schools within the district and the renovation of three existing schools in the district. In the contract documents, the school district declared that it is "agreed and understood that the [school district] does not represent that it is knowledgeable in architecture or other professional disciplines involving construction." The contracts also provide that the school district retained the authority to set the budgeting and scheduling for the project and the features of the schools that were to be constructed. The agreements further allow JCI "to use Subconsultants to assist JCI in performing the services." Thereafter, JCI subcontracted with respondent Architectural Resources, Inc. (ARI) to perform architectural services related to the project.

Relator Marshall Helmberger, who is the publisher and managing editor of Timberjay Newspapers,[1] submitted a request to the school district under the MGDPA for a copy of the subcontract between JCI and ARI. The school district maintained that it did not have a copy of the contract between JCI and ARI, and it directed Helmberger to contact JCI for the requested materials. Helmberger then contacted JCI, which refused to produce a copy of the subcontract, claiming that the subcontract was not subject to the MGDPA and, thus, not available to the public.

In March 2011, Helmberger requested an advisory opinion from the Minnesota Department of Administration regarding his right to obtain the subcontract between JCI and ARI. The department subsequently issued an opinion that generally agreed with Helmberger's position. Helmberger then filed a complaint with the Office of Administrative Hearings seeking an order compelling JCI to produce a copy of the subcontract between JCI and ARI. An ALJ dismissed the complaint, concluding that Helmberger failed to demonstrate probable cause that JCI had violated the MGDPA.

Helmberger filed a petition for reconsideration of the dismissal, which was granted by the chief administrative-law judge. ARI petitioned to intervene "[i]n order to protect its ... interests in the confidential and proprietary information contained in the subcontract." ARI's petition to intervene was granted, and the matter was set for an evidentiary hearing.

At the evidentiary hearing, Helmberger offered only his own testimony and the two contracts between JCI and the school district. At the close of Helmberger's case, JCI and ARI moved to dismiss the complaint. The ALJ granted the motion, concluding that the subcontract between JCI and ARI did not involve the performance of a governmental function within the meaning of the MGDPA and, therefore, was not subject to public disclosure. This certiorari appeal followed.[2]

## ISSUE

Did the ALJ err by concluding that JCI was not performing a "governmental function" within the meaning of the MGDPA when it provided management, construction, and architectural services to the school district?

## ANALYSIS

 Helmberger challenges the decision of the ALJ that JCI was not perform-

---

1. Timberjay Newspapers is located in Ely.

2. On May 2, 2012, this court granted ARI's motion to intervene as a respondent.

ing a "governmental function" within the meaning of the MGDPA when it provided management, construction, and architectural services to the school district. Construction of the MGDPA is a question of law subject to de novo review. *Navarre v. S. Washington Cnty. Sch.*, 652 N.W.2d 9, 22 (Minn.2002).[3]

The goal of statutory interpretation and construction "is to ascertain and effectuate the intention of the legislature," and each statute "shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16 (2010). This court construes the words of a statute "according to their common and approved usage." Minn.Stat. § 645.08(1) (2010). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, an appellate court interprets the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Kelbel*, 648 N.W.2d 690, 701 (Minn.2002). Evidence of legislative intent other than the plain language of the statute is considered only if the statute's language is ambiguous. *Minn. Ass'n of Prof'l Employees v. Anderson*, 736 N.W.2d 699, 702 (Minn.App. 2007).

The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." Minn.Stat. § 13.01, subd. 3 (2010). Under the MGDPA, "[a]ll government data collected, created, received, maintained or disseminated by a government entity shall be public," unless certain exceptions apply. Minn.Stat. § 13.03, subd. 1 (2010). "Government data" is defined as "all data collected, cre-

ated, received, maintained or disseminated by any government entity regardless of its physical form, storage media or conditions of use." Minn.Stat. § 13.02, subd. 7 (2010). Our supreme court has stated that the "purpose of the MGDPA is to balance the rights of individuals ... to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing." *Demers v. City of Minneapolis*, 468 N.W.2d 71, 72 (Minn.1991).

Under the MGDPA:

If a government entity enters into a contract with a private person to perform any of its functions, the government entity shall include in the contract terms that make it clear that all the data created, collected, received, stored, used, maintained, or disseminated by the private person in performing those functions is subject to the requirements of this chapter and that the private person must comply with those requirements as if it were a government entity.

Minn.Stat. § 13.05, subd. 11(a) (2010). Although "government function" is not defined in the MGDPA, the supreme court identified the test for a government function as a function of the government that "involves the exercise of power conferred by statute upon local agencies in administering the affairs of the state and the promotion of the general public welfare." *Mace v. Ramsey Cnty.*, 231 Minn. 151, 154, 42 N.W.2d 567, 569 (1950).

Helmberger argues that the ALJ erred by concluding that the subcontract between JCI and ARI did not involve the

---

**3.** ARI claims that this court should review the ALJ's decision for an abuse of discretion because it "necessarily involves factual analysis of the duties JCI and ARI were performing." But the relevant facts at issue here are undisputed and taken primarily from the contract

between JCI and the school district. Therefore, the standard of review is de novo because the issue requires this court to determine whether, as a matter of law, JCI was performing a governmental function under its contract with the school district.

performance of a government function within the meaning of the MGDPA because the decision fails to adequately consider *WDSI, Inc. v. Cnty. of Steele*, 672 N.W.2d 617 (Minn.App.2003). Helmberger contends that under *WDSI*, the school district contracted with JCI to perform a governmental function because the contract required JCI to perform project planning, architectural design, and construction management for the construction of two public schools and the renovation of three other public schools.

In *WDSI*, Steele County contracted with an architectural firm for the design of a new detention center. 672 N.W.2d at 619. WDSI, a subcontractor interested in bidding on the project, contacted the county and requested that the county provide information on how the prequalification standards were determined, how the specifications were relevant to quality assurance, and the qualifications of other bidders on the detention-center project. *Id.* The county referred WDSI to the architectural firm, which informed WDSI that it had a contract with the county, but that the contract does not convert the architectural firm's files into government data. *Id.* WDSI then made a request to the county under the MGDPA to obtain the information from the architectural firm. *Id.* When the county failed to comply with the request, WDSI brought suit against the county alleging that the county willfully failed to comply with the MGDPA. *Id.*

On appeal from a grant of summary judgment in favor of WDSI, this court recognized that governmental entities such as the county are "authorized to construct, purchase or lease, regulate and maintain county jails for the safekeeping of prisoners." *Id.* at 621 (quotation omitted). This court further stated:

> The construction of a jail to isolate from the public persons who arguably

pose a threat to society serves the common good and is a clear governmental function. The construction of an adequate jail entails planning, designing, and obtaining qualified builders. It would be a curious and artificial distinction to suggest that only the end product, or only the maintenance and operation of the end product, would satisfy the requirement of "governmental function" because all segments of the process are necessarily interrelated.

*Id.* Thus, this court held that constructing a jail and developing qualifications and requirements for the bidding process are governmental functions within the meaning of the MGDPA. *Id.*

We conclude that *WDSI* controls and that it is similar to this case. Minn.Stat. § 123B.02, subd. 2 (2010) provides that "[i]t is the duty and the function of the [school] district to furnish school facilities to every child of school age residing in any part of the district." The requirement that the school district "furnish school facilities" is similar to Minn.Stat. § 641.01 (2010), the statute cited in *WDSI* that grants counties the authority to construct and maintain jails. As in *WDSI*, the furnishing of school facilities may entail planning, designing, and obtaining qualified builders and architects to perform such duties. These are the same duties JCI contracted to perform. As in *WDSI*, it would be an "artificial distinction" to conclude that only the operation of the business aspect of the school district is a governmental function when section 123B.02, subdivision 2, clearly mandates that the school district "furnish school facilities" to school children.

JCI and ARI contend that *WDSI* is distinguishable because JCI was not performing any governmental functions. To support their claim, JCI and ARI point out that under the contract at issue in *WDSI*,

the county delegated to its architect sole responsibility for creating, maintaining, and applying the criteria used in determining whether a bidding contractor was qualified to be awarded a construction contract. JCI and ARI then focus on the specific data sought to be obtained in *WDSI:* information as to how the architect developed the prequalification standards for contractors bidding on the construction of the detention center. *See WDSI,* 672 N.W.2d at 621 (detailing information sought under MGDPA). JCI and ARI contend that in *WDSI,* the development of "qualifications and requirements for the bidding process" were functions specifically conferred by section 641.01, and therefore constituted a government function. JCI and ARI argue further that in contrast to *WDSI,* the prequalification bid requirements were neither sought by Helmberger nor delegated to JCI in the contract between JCI and the school district. Rather, the contract between JCI and the school district relates to project management, construction, and architectural services relating to the construction and renovation of schools. JCI and ARI argue that because providing management, construction, and architectural services relating to the construction and renovation of schools are not functions conferred by statute to the school district, JCI and ARI were not performing governmental functions.

JCI and ARI's interpretation of *WDSI* is overly narrow. Although the data sought in *WDSI* may not be the same information possessed by JCI or ARI under the contract between JCI and the school district, this court's holding in *WDSI* does not limit governmental functions to prequalification bid requirements pertaining to the construction of a detention center. Rather, the court concluded that "[t]he construction of an adequate jail entails planning, designing, and obtaining

qualified builders." *WDSI,* 672 N.W.2d at 621. JCI contracted to provide management, construction, and architectural services related to the construction and renovation of schools. By focusing only on the prequalification bid requirements, JCI and ARI ignore this court's broader holding that there are many aspects to the construction of a jail, in addition to the development of the prequalification bid requirements, that constitute a governmental function.

JCI and ARI also contend that no governmental function was delegated to JCI by the school district because the management, construction, and architectural services related to the construction and renovation of schools are not powers conferred by statute upon the school district. To support their claim, JCI and ARI refer to Minn.Stat. § 123B.02, subd. 1, which provides that a school district has "the general charge of the business of the district, the school houses, and of the interests of the schools thereof," including the ability to "govern, manage, and control the district." JCI and ARI contend that these powers conferred by section 123B.02, subdivision 1, are separate and distinct from the services that were delegated to JCI by the school district. JCI and ARI argue that because the services delegated to JCI are not powers specifically conferred by statute, the contract between JCI and the school district did not "privatize" any governmental function, which is necessary for Minn.Stat. § 13.05, subd. 11(a), to apply.

■ We agree that the MGDPA is triggered only if "a government entity enters into a contract with a private person to perform any of its functions." *See* Minn. Stat. § 13.05, subd. 11. But JCI and ARI's claim that the school district did not delegate any of its functions to JCI ignores the very next subdivision of the statute

cited to support their claim. Subdivision 2 of section 123B.02 provides that "[i]t is the duty of the district to *furnish school facilities* to every child of school age." (Emphasis added.) The term "furnish" is a very broad term, indicating that there are many ways that a school district may provide school facilities to children. The construction of new buildings and the renovation of existing buildings are certainly two ways that a school district could "furnish" school facilities. Thus, under *WDSI*, the construction of a school is a governmental function. *See WDSI*, 672 N.W.2d at 621 (stating that because section 641.01 authorizes governmental agencies to "construct" and "maintain" jails, the construction of a jail is a "clear governmental function").

JCI next argues that the MGDPA applies only to private entities that have received the required notice established in Minn.Stat. § 13.05, subd. 11(a), and have contracted to be subject to it. JCI contends that the contract between JCI and the school district does not contain the language that satisfies the MGDPA requirement that the contract state that all data JCI created, collected, received, stored, used, maintained, or disseminated in performing the school district's governmental functions is subject to the MGDPA as if JCI were a government entity. According to JCI, the failure to include this language in the contract absolves JCI from the requirement that it comply with the MGDPA.

To support its claim, JCI extensively refers to the legislative history of the MGDPA. But the argument raised by JCI was specifically raised and addressed by this court in *WDSI*. *See* 672 N.W.2d at 621–22. And the legislature has not materially changed the statute since *WDSI* was decided in 2003. *See Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 244 (Minn.2005) (stating that if the legislature declines to make any further laws on the subject, it is presumed to have done so with full knowledge of existing caselaw). Because this court has previously interpreted the statute, we need not look beyond *WDSI* nor turn to the legislative intent discussed by JCI. *See A.J. Lights, LLC v. Synergy Design Grp., Inc.*, 690 N.W.2d 567, 569 (Minn.App.2005) (stating that this court "must look to relevant caselaw for guidance" when construing ambiguous statutes).

In *WDSI*, this court considered whether the failure to include the language from Minn.Stat. § 13.05, subd. 11(a), in a contract between a governmental entity and a private party rendered the requirements of that statute inapplicable to the parties' contract. 672 N.W.2d at 621–22. This court stated that to accept the argument that the MGDPA was not applicable because the parties neglected to include the language from Minn.Stat. § 13.05, subd. 11(a), in the contract "would be to simply ignore the mandate" of that statute that a private party that has contracted with a governmental entity to perform a governmental function has a duty to provide the public with the governmental data. *Id.* This court further stated that although the mandate was not expressly reflected in the contract between the county and the architectural company, "it applies nevertheless, and neither contracting parties nor the courts can simply ignore it." *Id.* at 622. And, despite JCI's claim that this language from *WDSI* is "merely dictum," our review of the case indicates that this language is not dictum, but was crucial to the decision in *WDSI*. *See id.* at 621–22. Thus, under *WDSI*, the fact that the MGDPA's notice provision was not contained in the contract between JCI and the school district does not excuse JCI, which is a sophisticated contractor, from its responsibilities under the MGDPA.

ARI also contends that *WDSI* is not controlling because that case arose out of a contract made directly between a private party and a government entity, whereas this case concerns a subcontract between JCI and ARI, two private parties. We disagree. The subcontract between JCI and ARI is a direct and anticipated product of the contract between JCI and the school district that, under *WDSI*, is subject to the mandates of the MGDPA. In other words, if JCI was performing a governmental function on behalf of the school district, it necessarily follows that any subcontract JCI made pursuant to its general contract with the school district would likewise relate to a governmental function. *See Black's Law Dictionary*, 373 (9th ed.2009) (defining "subcontract" as "[a] secondary contract made by a party to the primary contract for carrying out the primary contract, or part of it"). Therefore, we conclude that any contractual distinction between the contract at issue in *WDSI* and the subcontract between JCI and ARI does not diminish *WDSI*'s precedential value.

Finally, ARI argues that compelling disclosure of the JCI subcontract with ARI would create serious public-policy concerns. But ARI's public-policy argument conflicts with this court's holding in *WDSI*, which, as discussed above, mandates that the contract between JCI and the school district is subject to the MGDPA. And it is well settled that the "legislature intends to favor the public interest against any private interest." Minn.Stat. § 645.17(5) (2010). The plain language of section 645.17(5) refutes ARI's public-policy argument.

## DECISION

Under *WDSI*, JCI was performing a "governmental function" within the meaning of the MGDPA when it provided project management, construction, and architectural services to the school district. Accordingly, we reverse the ALJ's decision dismissing Helmberger's complaint and remand for further proceedings not inconsistent with this opinion.

**Reversed and remanded.**