Marshall **HELMBERGER**, Respondent,

v.

**JOHNSON CONTROLS, INC.**, Appellant,

**Office of Administrative Hearings,** Respondent,

**Architectural Resources, Inc.**, Appellant.

No. A12–0327.

Supreme Court of Minnesota.

Nov. 20, 2013.

Mark R. Anfinson, Minneapolis, MN, for respondent Marshall Helmberger.

Todd A. Wind, Christopher A. Stafford, Fredrikson & Byron, P.A., Minneapolis, MN, for appellant Johnson Controls, Inc.

Steven R. Lindemann, Amy B. Conway, Leonard, Street & Deinard, P.A., Minneapolis, MN, for appellant Architectural Resources, Inc.

Mark A. Bloomquist, Meagher & Geer, P.L.L.P.; Michael B. Lapicola, Faegre Baker Daniels, LLP; and Dean B. Thomson, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for amici curiae American Council of Engineering Companies of Minnesota, American Institute of Architects Minnesota, and Minnesota State Bar Association Construction Law Section.

## OPINION

GILDEA, Chief Justice.

This case presents the question of whether a subcontract between two private businesses is subject to the requirements of the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.01–.90 (2012). Appellant Johnson Controls, Inc., contracted with Independent School District 2142 (the District) to provide design services. After Johnson subcontracted with appellant Architectural Resources, Inc., respondent Marshall Helmberger submitted a request to Johnson under the Data Practices Act for a copy of the Johnson–Architectural Resources subcontract. Johnson denied the request and Helmberger subsequently filed a complaint with the Office of Administrative Hearings (OAH). After an evidentiary hearing, an administrative law judge (ALJ) dismissed the complaint. The court of appeals reversed. Because we conclude that Johnson is not obligated to disclose the subcontract under the Data Practices Act, we reverse the court of appeals.

The facts of this case are undisputed. On February 25, 2010, the District entered

into two contracts with Johnson related to the construction of two new schools and the renovation of three existing schools. Under both contracts, Johnson agreed to "provide design, engineering, commissioning and construction management services." Johnson's principal obligation under the contracts was to provide "design services through licensed consultants including normal architectural, structural, mechanical, civil and electrical engineering and commissioning services, and any other services necessary to produce a complete set of Construction Documents." The contracts permitted Johnson to use subcontractors "to assist ... in performing the services." Johnson subsequently entered into a subcontract with Architectural Resources for architectural services.

In March 2011, Marshall Helmberger, the publisher and managing editor of the Timberjay newspapers in St. Louis County, sent a request to Johnson under the Data Practices Act for certain information, including a copy of Johnson's subcontract with Architectural Resources. Johnson denied Helmberger's request.

Helmberger then requested an advisory opinion from the Commissioner of Administration pursuant to Minn.Stat. § 13.072 [1] as to whether Johnson is required to comply with the Data Practices Act. The Commissioner issued an opinion, concluding, among other things, that Johnson is required to provide a copy of the subcontract with Architectural Resources to Helmberger because Johnson "is performing a governmental function for the District." Notwithstanding this opinion, Johnson continued to withhold the subcontract.

Helmberger then filed a complaint with the office of administrative hearings, seeking an order that Johnson comply with his request for inspection of documents, including "all subconsultant contracts" related to Johnson's contract with the District. Architectural Resources intervened in the proceedings. An evidentiary hearing took place, and Johnson moved for judgment as a matter of law at the close of Helmberger's case-in-chief. The administrative law judge granted Johnson's motion and dismissed Helmberger's complaint. The judge concluded that Helmberger did not establish that Johnson "was performing a 'governmental function' as described in Minn.Stat. § 13.05, subd. 11(a)." The judge reasoned that "the Legislature has not directed School Districts to undertake the kind of architectural services that are contemplated by the ... subcontract." The judge also concluded that Helmberger failed to establish that architectural services have traditionally been performed by the District or by Minnesota school districts generally.

The court of appeals reversed, holding that Johnson had contracted to perform a government function within the meaning of Minn.Stat. § 13.05, subd. 11(a). *Helmberger v. Johnson Controls, Inc.,* 821 N.W.2d 831, 838 (Minn.App.2012). Because the Data Practices Act does not define a government function, the court of appeals applied the definition from our decision in *Mace v. Ramsey County,* 231 Minn. 151, 42 N.W.2d 567 (1950), in which we said that a function is governmental when it "involves the exercise of power conferred by statute upon local agencies in administering the affairs of the state and the promotion of the general public welfare." *See Helmberger,* 821 N.W.2d at 834 (quot-

1. Minnesota Statutes § 13.072, subd. 1(a), provides in part: "Upon request of any person who disagrees with a determination regarding data practices made by a government entity, the commissioner may give a written opinion regarding the person's rights as a subject of government data or right to have access to government data."

ing *Mace,* 231 Minn. at 154, 42 N.W.2d at 569). The court of appeals determined that Johnson was performing a government function because school districts have a statutory duty to " 'furnish school facilities' to school children." *Id.* at 835 (quoting Minn.Stat. § 123B.02, subd. 2 (2010)). The court reasoned that furnishing school facilities entails "planning, designing, and obtaining qualified builders and architects to perform such duties," which are duties that Johnson contracted to perform. *Id.* The court also rejected Johnson's argument that the Data Practices Act applies only to private entities that have received the contract notice required by Minn.Stat. § 13.05, subd. 11(a). *Helmberger,* 821 N.W.2d at 837 (noting that the court of appeals had specifically rejected that argument in *WDSI, Inc. v. County of Steele,* 672 N.W.2d 617, 621–22 (Minn.App.2003)). Concluding that Johnson had contracted with the District to perform a government function, the court remanded to the administrative law judge for further proceedings. *Id.* at 838.

We granted the petitions for review of Johnson and Architectural Resources. On appeal to our court, Johnson argues that because its contract with the District did not provide notice that Johnson was subject to the Data Practices Act, Johnson is not bound by the provisions of the Act and the subcontract between Johnson and Architectural Resources is not public data under the Act. Johnson and Architectural Resources also argue that the court of appeals applied the wrong test to determine whether Johnson was performing a government function for purposes of Minn. Stat. § 13.05, subd. 11(a). When the correct legal test is applied, they argue that Johnson was not performing a government function. For his part, Helmberger argues that because Johnson contracted to perform a government function, the sub-

contract is public information under the Data Practices Act.

## I.

Before addressing the parties' arguments, we begin with a brief overview of the Data Practices Act. The Data Practices Act "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." Minn.Stat. § 13.01, subd. 3. The Act defines what data are "public" for purposes of the Act: "All government data collected, created, received, maintained or disseminated by a government entity shall be public unless classified by statute . . . as nonpublic[,] . . . private or confidential." Minn.Stat. § 13.03, subd. 1; *see also* Minn. Stat. § 13.02, subd. 7 (defining "government data" as "all data collected, created, received, maintained or disseminated by any government entity regardless of its physical form, storage media or conditions of use"). The Act therefore "establishes a presumption that government data are public and are accessible by the public for both inspection and copying unless there is a federal law, a state statute, or a temporary classification of data that provides that certain data are not public." Minn. Stat. § 13.01, subd. 3.

When first enacted in 1974, the Data Practices Act did not provide for the disclosure of public data held by private entities. Act of Apr. 11, 1974, ch. 479, 1974 Minn. Laws 1199. In 1999, the Legislature added a provision relating to the privatization of government functions. Act of May 25, 1999, ch. 250, art. 1, § 42, 1999 Minn. Laws 2728, 2756–57. This provision states:

(a) *If a government entity enters into a contract with a private person to perform any of its functions,* the government entity shall include in the contract terms that make it clear

that all of the data created, collected, received, stored, used, maintained, or disseminated by the private person in performing those functions is subject to the requirements of this chapter and that the private person must comply with those requirements as if it were a government entity. The remedies in section 13.08 apply to the private person under this subdivision.

(b) This subdivision does not create a duty on the part of the private person to provide access to public data to the public if the public data are available from the government entity, except as required by the terms of the contract.

Minn.Stat. § 13.05, subd. 11 (emphasis added). The focus of the parties' dispute is whether the subcontract between Johnson and Architectural Resources is public data under this provision.

■■■ The scope of section 13.05, subdivision 11(a), is a question of statutory interpretation that we review de novo. *See Clark v. Lindquist,* 683 N.W.2d 784, 785 (Minn.2004). The objective of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *City of Brainerd v. Brainerd Invs. P'ship,* 827 N.W.2d 752, 755 (Minn.2013) (citing Minn. Stat. § 645.16 (2012)). If the Legislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning without resorting to the canons of statutory construction. *Id.*

## II.

■■ We turn now to the parties' arguments. Helmberger argues that the subcontract between Johnson and Architectural Resources is public data under Minn. Stat. § 13.05, subd. 11(a), because Johnson contracted with the District to perform a government function. We disagree.

By its plain and unambiguous terms, Minn.Stat. § 13.05, subd. 11(a), is simply a notice provision that addresses the contractual terms that a government entity must include when contracting with a private business to perform a government function. The contractual terms required by the statute advise the private business that all data related to the performance of the government function are subject to the requirements of the Data Practices Act. Minn.Stat. § 13.05, subd. 11(a). There is no dispute in this case that the contract between the District and Johnson did not contain this provision. Helmberger argues, however, that the omission of the statutory notice is immaterial because the subdivision as a whole "indicates that the statute is presumed to apply regardless of whether the notice provision appears in an agreement." The statutory text does not support Helmberger's argument.

There is no language in Minn.Stat. § 13.05, subd. 11(a), or any other provision of the Data Practices Act, that imposes any direct, affirmative obligations on private businesses that enter into contracts with the government. Rather, subdivision 11 is part of the section of the Data Practices Act that sets forth the duties of the government's "responsible authority." Minn.Stat. § 13.05; *see* Minn.Stat. § 13.02, subd. 16 (defining "responsible authority" as the government official who is responsible for the collection, use, and dissemination of certain categories of data). And, similar to other subdivisions included in section 13.05, subdivision 11 prescribes the obligations of the government. Subdivision 11 specifically describes the government's obligations when it enters into certain contracts. Under the plain language of subdivision 11(a), the government is required to provide clear notice in contracts

for the performance of a government function that a private business performing such a function is "subject to the requirements of [the Data Practices Act] and that the [businesses] must comply with those requirements as if it were a government entity." Minn.Stat. § 13.05, subd. 11(a). Here, the District did not include the requisite notice in its contract with Johnson.[2]

We are left, therefore, to determine whether in the absence of such notice, a contract between two private businesses relating to the construction and renovation of schools is public information under the Act. We conclude that it is not. There is no provision in the Data Practices Act that makes a contract between two private businesses public. The Act regulates access to "government data," Minn.Stat. § 13.01, subd. 3, and provides that "data collected, created, received, maintained or disseminated" by the government are generally public, Minn.Stat. § 13.03, subd. 1. The contract at issue in this case was not created or held by the government; rather, the contract was entered into between private businesses and held by those businesses.

■ Even if Johnson had contracted to perform a government function, as the court of appeals concluded, the result would be the same. The Data Practices Act simply does not state that data held by a government contractor performing a government function are public. Further, Johnson did not agree to be bound by the Act. Johnson has neither a contractual nor a statutory duty to disclose the subcontract. If the Legislature had intended to create a new category of public data or impose direct obligations on government contractors, the Data Practices Act would contain express language to that effect. It is our job to apply the statute as written, not to impose unexpressed duties on private businesses or parties. *See Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 760 (Minn.2010) ("If the legislature fails to address a particular topic, our rules of construction 'forbid adding words or meaning to a statute' that are purposely omitted or inadvertently overlooked." (quoting *Genin v.1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn.2001))).

In sum, we hold that the subcontract between Johnson and Architectural Resources is not public under the Data Practices Act. We therefore reverse the court of appeals without reaching the question of whether Johnson was performing a government function within the meaning of Minn.Stat. § 13.05, subd. 11(a).

Reversed.

LILLEHAUG, J., took no part in the consideration or decision of this case.

PAGE, Justice (concurring).

I agree with the court that Johnson's contract with Architectural Resources is not subject to the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.01–.90 (2012). I disagree, however, with the court's blanket conclusion that data held by a private person performing a government function are nonpublic. In my view, whether data in the possession of a private person[1] as a result of a government

---

2. Johnson apparently concedes that if it had contracted to perform a government function and the contract contained the notice provision required by Minn.Stat. § 13.05, subd. 11(a), Johnson's documents relating to the performance of the government function would be subject to the Data Practices Act.

We need not resolve whether Johnson's concession is consistent with the statute, however, because the contract between Johnson and the District does not include the notice provision.

1. Under the Act, Johnson is a private person. " 'Person' means any individual, partnership,

contract is public depends on whether the contract calls for the contractor to perform a government function. Thus, in this case, whether Johnson must comply with the Act depends on whether its contract with the District calls for Johnson to perform a government function. Ultimately, I conclude that it does not. Therefore, I concur in the result.

## I.

Whether the Act makes data public that is held by a private person who contracts to perform a government function presents a question of statutory interpretation, which we review de novo. *Auto–Owners Ins. Co. v. Second Chance Invs., LLC,* 827 N.W.2d 766, 771 (Minn.2013). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). The language of the statute is our primary source for determining legislative intent. *Brayton v. Pawlenty,* 781 N.W.2d 357, 363 (Minn.2010). "We are to read and construe a statute as a whole...." *Am. Fam. Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000).

Minnesota Statutes § 13.05, subd. 11(a), provides that when a government entity contracts with a private entity to perform a government function:

> [T]he government entity shall include in the contract terms that make it clear that all of the data created, collected, received, stored, used, maintained, or disseminated by the private person ... is subject to the requirements of this chapter and that the private person must comply with those requirements as if it were a government entity.

Minn.Stat. § 13.05, subd. 11(a) (2012).

In my view, the court's analysis ignores the plain language of section 13.05, subdi-

vision 11(a), and leads to absurd results. The language of subdivision 11(a) requires a government entity entering into a contract with a private person to perform a government function to inform the private person in a clear way "that all of the data created ... or disseminated" by the private person is subject to the Act's requirements and that compliance with the Act's provisions is required. Thus, the subdivision requires notice to private persons contracting to perform a government function that they stand in the shoes of the government entity with respect to data relating to the government function. Implicit in the statute's mandate that the government entity make the private person's obligations "clear" is that the private person has some affirmative obligation to disclose data related to the contract.

Further, it cannot be the case that the Legislature intended for the obligation to comply with the Act to exist only for those private persons whose contracts include the required notice and not those whose contracts lack the notice. Under such circumstances, the purposes underlying the Act would be thwarted. Under the Act, all government data is presumed to be public and accessible to the public unless the data is covered by an exception to the Act. Minn.Stat. § 13.01, subd. 3. By its plain language, it is clear that subdivision 11(a) is intended to ensure that data in the hands of private persons performing a government function are treated the same as if a government entity were performing the function. Under the court's reading of subdivision 11(a), however, a government entity could, in order to keep certain data private, contract out a particular

---

corporation, association, business trust, or a legal representative of an organization."

Minn.Stat. § 13.02, subd. 10 (2012).

government function to a private person, not include the required notice, and thereby defeat the Legislature's purpose in enacting the Act. There is nothing to suggest that the Legislature intended to permit such circumstances to occur. Therefore, if the contract between the District and Johnson requires Johnson to perform a government function, Johnson must comply with the requirements of Minn.Stat. § 13.05, subd. 11(a).

## II.

Applying Minn.Stat. § 13.05, subd. 11(a), to the contract at issue here between the District and Johnson, I conclude that Helmberger's claim fails because the contract does not require *Johnson* to perform a government function. Thus, the District had no obligation to include in the contract the terms required by Minn.Stat. § 13.05, subd. 11(a), and Johnson had no obligation to comply with the requirements of subdivision 11(a).

Helmberger contends that the court of appeals was correct in applying the definition of government function we set out in *Mace v. Ramsey County*, 231 Minn. 151, 154, 42 N.W.2d 567, 569 (1950). In *Mace,* we stated that a function is governmental for the purposes of immunity from tort liability when it "involves the exercise of power conferred by statute upon local agencies in administering the affairs of the state and the promotion of the general public welfare." *Id.* By urging the court to apply the *Mace* definition, Helmberger

would have the court conclude, as articulated by the court of appeals, that a private entity has contracted to perform a government function within the meaning of Minn.Stat. § 13.05, subd. 11(a), whenever there is a statute that in any way could be read to confer a duty on the government entity to perform the services outlined in the contract. I reject the approach taken by the court of appeals and argued by Helmberger. The problem with the definition articulated and applied by the court of appeals is that there are very few services, if any, that a private entity might contract to perform that would not constitute a government function. I do not read Minn. Stat. § 13.05, subd. 11, so broadly.

The determination of whether or not a private entity has contracted to perform a government function is dependent on the facts and circumstances of each case. The following non-exclusive list of factors are helpful in assessing whether a private entity has contracted to perform a government function under Minn.Stat. § 13.05, subd. 11: (1) whether a statute confers upon the government entity the duty to perform the services outlined in the contract; (2) the degree to which the government entity has delegated decision-making authority to the private person; and (3) whether the contracting government entity has performed the contracted-for services in the past.[2] These factors are non-exclusive and are entitled to varying weight depending on the facts and circumstances of the case.

**2.** Johnson urges the court to adopt a test for determining whether a private person has contracted to perform a government function that turns on whether the activity in question is one that the government entity has traditionally performed. The United States Supreme Court has been reluctant to engage in inquiries that depend entirely on what constitutes a "traditional" role of government because such inquiries "prevent[ ] a court from accommodating changes in the historical functions" of the government and "result[ ] in line-drawing of the most arbitrary sort." *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 543–44, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). For these reasons, I do not rely *exclusively* on tradition in assessing what constitutes a government function for the purposes of Minn.Stat. § 13.05, subd. 11.

Applying the factors here, the contract between Johnson and the District did not call for Johnson to perform a government function. Helmberger argues, and the court of appeals agreed, that Johnson contracted to perform a government function because Minn.Stat. § 123B.02, subd. 2 (2012), which provides that "[i]t is the duty and the function of the district to furnish school facilities to every child of school age residing in any part of the district," confers a duty on the District to provide the services Johnson contracted to perform. *Helmberger v. Johnson Controls, Inc.*, 821 N.W.2d 831, 835 (Minn.App. 2012). Helmberger's argument is unpersuasive because the contracts here do not require Johnson to "furnish school facilities," but to provide specialized design "services necessary to produce a complete set of Construction Documents." The services outlined in the contracts between Johnson and the District are too attenuated from the actual function set forth in section 123B.02, subdivision 2. For this reason, section 123B.02, subdivision 2, does not confer upon the District the duty to perform the design services at issue in its contracts with Johnson.[3] Further, a review of the contracts indicates that the District did not delegate any of its decision-making authority to Johnson. *See News & Sun–Sentinel Co. v. Schwab, Twitty & Hanser Architectural Grp., Inc.*, 596 So.2d 1029, 1032 (Fla.1992) (holding that an architectural firm that contracted with a school district was not subject to the requirements of Florida's public rec-

ords law in part because architectural services were not an "integral part of the school board's decision-making process" and because the board did not delegate its decision-making power). Under both contracts, the primary components of Johnson's work product are subject to District approval, including the schedule, proposed project requirements, objectives, design plans, and cost estimates. Thus, substantial evidence supports the ALJ's finding that "the School District retained for itself the authority to set the budgeting and scheduling for the project and the features of the schools that were to be constructed." *See In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits*, 664 N.W.2d 1, 7 (Minn.2003) (explaining that the substantial-evidence test is satisfied when there is relevant evidence in the record that a reasonable mind might accept as adequate to support a conclusion). Finally, there is nothing in the record that suggests that the District has ever in the past performed the specialized design "services necessary to produce a complete set of Construction Documents" for the construction or renovation of a school.

## III.

In summary, I disagree with the court's conclusion that the Data Practices Act does not make data public that are held by a private person performing a government function. However, I do not believe Johnson contracted with the District to perform

---

**3.** The advisory opinion issued by the Commissioner of Administration pursuant to Minn. Stat. § 13.072, subd. 1, in response to Helmberger's request similarly relied on the language of Minn.Stat. § 123B.02, subd. 2, in concluding that Johnson was performing a government function under Minn.Stat. § 13.05, subd. 11(a). While the Commissioner's opinion is entitled to deference, Minn. Stat. § 13.072, subd. 2, we are not bound to

follow it. *In re Admonition Issued in Panel File No. 99–42*, 621 N.W.2d 240, 244–45 (Minn.2001) (explaining that opinions issued pursuant to section 13.072, subdivision 1, are "not binding on courts"). For the reasons discussed above, I would reject the Commissioner's interpretation of Minn.Stat. § 123B.02, subd. 2, and its conclusion that Johnson contracted to perform a government function.

a government function. Therefore, I agree with the court that Johnson's contract with Architectural Resources is not public data and that Johnson is not required to provide its contract with Architectural Resources to Helmberger.

WRIGHT, Justice (concurring).

I join in the concurrence of Justice Page.