*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0820**

In re: Application for an Order for Inspection of
David Berglund and Lake View Natural Dairy,
140 County Road 56, Grand Marais, MN 55604

**Filed February 6, 2017
Affirmed
Reyes, Judge**

Cook County District Court
File No. 16-CV-14-212

Zenas Baer, Zenas Baer Law Office, Hawley, Minnesota (for appellants)

Lori Swanson, Attorney General, Max Kieley, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Agriculture)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and T. Smith, Judge.

# U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

Appellant argues that (1) the Minnesota Department of Agriculture (the MDA) has no statutory authority to regulate the sale of raw milk or to inspect his farm; (2) any regulation of the sale of raw milk to his customers or inspection of his farm violates his state and federal fundamental constitutional rights; and (3) allowing inspection of his farm would violate his Fourth Amendment rights. The MDA has statutory authority to inspect appellant's farm, and there is no constitutional violation from the MDA's

authority to regulate appellant's sale of raw milk and raw-milk products. Furthermore, an inspection of appellant's farm by the MDA supported by a validly issued warrant does not violate appellant's Fourth Amendment rights. We affirm.

**FACTS**

In January 2013, the MDA learned that appellant David Berglund was operating an on-site dairy retail store under the name of Lake View Natural Dairy (the dairy). After being contacted by a representative of Associated Milk Producers Inc. (AMPI), the MDA was concerned that Berglund was selling milk products from the dairy to consumers in violation of MDA regulations. The MDA confirmed that the dairy was advertising unpasteurized milk products on the internet and that it had an on-site retail store, which sold dairy products and various foods.

The MDA visited the dairy on February 26, 2013. Berglund refused to allow the MDA inspectors access to the dairy. Subsequently, the MDA sent Berglund several letters in an attempt to schedule a compliance meeting to discuss the dairy's potential non-compliance with Minnesota regulations relating to the sale of unpasteurized dairy products. After Berglund continued to delay attending a compliance meeting, the MDA issued a notice of warning letter (NOW letter) to Berglund. The NOW letter notified Berglund that he was in violation of numerous state and federal food-safety regulations, including: (1) operating without an appropriate dairy-producer permit or certification; (2) operating without an appropriate dairy-plant permit; and (3) manufacturing and selling to the public unpasteurized yogurt, butter, and buttermilk. The NOW letter

2

ordered Berglund to cease manufacturing the prohibited items until he obtained the appropriate permits and came into compliance with health and food-safety laws.

On September 27, 2013, MDA inspectors again went to the dairy to inspect it. The dairy was open, but unattended. The MDA inspectors took numerous photographs of the dairy, its processing equipment, and the products that were marked for sale. These products included "unpasteurized whole milk, skim milk, chocolate milk, colostrum, cream, yogurt, buttermilk, cookies and eggs." After taking photographs, the inspectors located Berglund and requested a full inspection. Berglund refused. The MDA inspectors then left a food establishment inspection report (the report) in Berglund's vehicle. The report directed Berglund to "[d]iscontinue the manufacturing of dairy products without the appropriate permits and approvals. Minn. Stat. [] 32.392. Comply immediately." The report further stated that "[t]he refusal to permit entry or inspection is a prohibited act under Minn. Stat. 31.02." Finally, the report noted that Berglund had 20 days to appeal any orders in writing to the MDA Commissioner.

The MDA then sent a "Notice of Amended Report," that ordered Berglund to: (1) "[d]iscontinue the manufacture and sale of misbranded food"; (2) "[d]iscontinue the sale of food from an unapproved source, not in compliance with the laws and rules of Minnesota"; (3) "[d]iscontinue the manufacture and sale of unpasteurized dairy products"; and (4) "[o]btain licensure for the manufacture and sale of products not produced from the farm or garden." Berglund was informed that he had 20 days to appeal the orders in writing to the commissioner.

Prior to the expiration of the appeal period, Berglund wrote to the MDA explaining that he did not agree with their procedures and that he believed his constitutional rights were being violated. The MDA informed Berglund that it was treating his letter as an appeal from the MDA order and it forwarded the matter to the Attorney General's Office. The Attorney General's Office sent Berglund a letter stating that no further review would occur because Berglund did not finalize his appeal, and the MDA orders were final. The MDA then filed an ex-parte application for an administrative inspection order (the AIO) with the district court, commencing the current case. The district court signed the AIO, allowing an inspection of the dairy. The MDA attempted an inspection on October 22, 2014, but Berglund continued to refuse inspection.

The MDA then filed an ex-parte motion for an order to show cause why Berglund should not be held in contempt of court for refusing the court-ordered inspection. The district court issued an order to show cause and set a hearing date. Berglund retained counsel who submitted a response to the MDA's AIO request, raising numerous constitutional issues.

At the AIO hearing, Berglund argued, inter alia, that the MDA lacks the statutory authority to regulate and inspect the dairy due to Berglund's rights to sell and peddle the products of his farm under article XIII, section 7 of the Minnesota Constitution. Berglund also raised numerous other constitutional arguments, including that his due-process and equal-protection rights have been violated. The district court issued an order determining that: (1) the MDA's regulation and inspection authority is not prohibited by

4

article XIII, section 7 of the Minnesota Constitution; (2) although the dairy is exempt from inspections under Minn. Stat. § 32.392 (2016) because it does not fall under the definition of a dairy plant, under Minn. Stat. §§ 17.984, 31.04, subd. 1, 32.103 (2016), it is subject to inspection; (3) Minn. Stat. §§ 17.984, 31.04, subd. 1, 32.103 are constitutional and do not violate Berglund's Fourth Amendment rights; (4) because the MDA provided sufficient evidence of an existing violation, the AIO is constitutionally valid and enforceable; (5) the AIO and the regulatory scheme upon which it relies are rationally related to a legitimate governmental purpose; and (6) Berglund's other constitutional claims are without merit. The district court also denied Berglund's request for an evidentiary hearing on his constitutional challenges. This appeal follows.

## D E C I S I O N

Berglund argues that the district court erred in determining that (1) the MDA has statutory authority to regulate and inspect the dairy;[1] (2) the regulatory scheme does not violate his constitutional rights; and (3) inspection of his farm violates his Fourth Amendment rights. We address each in turn.

## I. The MDA has the authority to regulate Berglund's sale of raw milk and inspect his farm.

"[S]tatutory construction is a question of law, which we review de novo." *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009). Furthermore, "[t]he application of statutes,

---

[1] The district court determined, and we agree, that Minn. Stat. § 28A.15, subd. 2 (2016), is not applicable because Minn. Stat. § 28A.15 only provides licensing exceptions to the licensing provisions of Minn. Stat. §§ 28A.01 to 28A.16. Therefore, we do not analyze it.

administrative regulations, and local ordinances to undisputed facts is a legal conclusion and is reviewed de novo." *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 5 (Minn. 2008). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2016). Absent ambiguity as to the legislature's intent from a statute's plain language, we interpret the statute according to its plain meaning. *Helmberger v. Johnson Controls, Inc.*, 839 N.W.2d 527, 531 (Minn. 2013).

## A. Whether subject to licensing or not, Berglund is subject to the MDA's regulation and inspection authority.

Berglund asserts, and the MDA does not dispute, that Berglund is exempt from licensing under article XIII, section 7 of the Minnesota Constitution. Berglund argues that the licensing exemption means he is exempt from regulation as well. We disagree.

"[T]he protection provided by article XIII, section 7, against licensing requirements does not exempt farmers from substantive regulation related to the production or sale of their farm products." *State v. Hartmann*, 700 N.W.2d 449, 456 (Minn. 2005). Even if Berglund is exempt from licensing requirements under article XIII, section 7, if he produces or sells farm products regulated by the state, he cannot "ignore regulations imposed on the production of those products." *Id.* In addition, article XIII, section 7 does not grant him the right to sell products that he is otherwise legally prohibited from selling. *See id.*

6

**B.    The MDA has authority to inspect Berglund's farm under Minn. Stat. § 17.984 and to enforce or regulate under Minnesota Statutes chapter 32.**

Berglund further argues that the MDA's power to inspect under Minn. Stat. § 17.984 applies only to facilities that are subject to licensing.  We disagree.

Section 17.984, subdivision 1, provides the MDA with general inspection authority, in order to carry out its duties under chapter 32, "for reasons related to the commissioner's enforcement and licensing authority."  Since the inspection authority granted to the MDA under section 17.984 is general in nature, it allows inspection of any place subject to chapter 32.  If Berglund is subject to chapter 32 enforcement, he is also subject to inspection under section 17.984.  Thus, we must determine whether Berglund falls under the MDA's enforcement duties under chapter 32.

Chapter 32 regulates the enforcement and licensing of dairy products.  Minn. Stat. §§ 32.01-32.90 (2016).  Minn. Stat. § 32.01, subd. 10, defines dairy products to include, among other things, milk as defined in title 21 of the Code of Federal Regulations.  Title 21 defines milk as "the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows."  21 C.F.R. § 131.110 (2016).  The sale of unpasteurized milk is banned with the exception of "milk occasionally secured or purchased for personal use by any consumer at the place or farm where the milk is produced."  Minn. Stat. § 32.393, subd. 1.  Because Berglund is engaged in the production and sale of dairy products, he is subject to regulation under chapter 32.  Accordingly, he is subject to inspection under section 17.984.

**C.    The MDA has authority to inspect Berglund's farm under Minn. Stat. § 32.103.**

7

Berglund next contends that the district court erred in its determination that Berglund's farm is subject to the MDA's inspection authority under section 32.103 because it only applies to dairies that introduce food products into commerce. We are not persuaded.

Minn. Stat. § 32.103(a) allows inspections of "all places where dairy products are made, stored, or served as food for pay, and all places where cows are kept by persons engaged in the sale of milk, and shall require the correction of all insanitary conditions." Contrary to Berglund's assertions, the application of section 32.103 is not limited to those who "introduce food products into commerce." And, by his own admission, Berglund sells his dairy products to nearly 150 customers, maintains a retail store, and advertises his products online. Therefore, the MDA has authority to inspect Berglund's farm under section 32.103.

### D. The MDA has authority to inspect Berglund's farm under Minn. Stat. § 31.04.

Berglund next argues that the district court erred in determining that the MDA has authority to inspect his farm under Minn. Stat. § 31.04, subd. 1, because he does not introduce food into commerce. We disagree.

Section 31.04, subdivision 1, allows the MDA, "[f]or the purposes of enforcement of the Minnesota Food Law, . . . to enter, . . . any factory, warehouse, or establishment in which food is manufactured, processed, packed or held for introduction into commerce." Commerce is not defined by the statutes governing Minnesota Food Laws. Black's Law Dictionary defines commerce as "[t]he exchange of goods and services, esp. on a large

8

scale involving transportation between cities, states, and countries." *Black's Law Dictionary*, 325 (10th ed. 2014). Berglund is involved in the sale of milk to nearly 150 individuals. Importantly, Berglund advertised his business online and opened himself up to sell his dairy products to any person. The district court did not err in determining that Berglund introduced his products into commerce.

Therefore, we conclude that the MDA has authority to regulate and inspect Berglund's farm under Minn. Stat. §§ 17.984, 32.103, and 31.04, subd. 1.

## II. MDA's authority to regulate the dairy farm does not violate Berglund's constitutional rights.

Berglund next argues that the MDA's inspection statutes violate his constitutional due-process and equal-protection rights, including his right to contract, right of association, and right to privacy. We disagree.

Berglund asserts that his equal-protection rights would be violated because: (1) he has a fundamental right to "sell or peddle" the products of his farm under article XIII, section 7 of the state constitution; (2) the MDA regulation and inspection statutes are interfering with Berglund's voluntary decision to sell and his customers' rights to buy raw milk products; and (3) his right to contract and right of association are fundamental rights that are being limited by the exercise of the MDA's authority. Berglund also argues that his constitutional due-process rights are being violated. Berglund therefore claims that the MDA's regulatory scheme is subject to strict scrutiny. We disagree.

"Strict scrutiny is required when a fundamental right is limited or a classification is based upon a suspect class." *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn. 1983).

9

"Neither [the Minnesota supreme court] nor the United States Supreme Court has recognized freedom of . . . contract as [a] fundamental right[] sufficient to invoke strict judicial scrutiny." *Id.* Moreover, this court has rejected the notion that farmers have a fundamental liberty to sell their farm products. *See State v. Wright*, 588 N.W.2d 166, 168 (Minn. App. 1998) (citing Minnesota Statutes chapter 31, the Minnesota Food Law, which, inter alia, "prohibit[s] the sale of unwholesome, misbranded or adulterated food"), *review denied* (Minn. Feb. 24, 1999). Here, Berglund sells raw milk to consumers. The right to sell milk is not a fundamental liberty that has ever been recognized by Minnesota courts. We decline Berglund's request to recognize a new fundamental liberty.

Rational-basis review applies where there is no showing that a law has impinged on a fundamental right or has affected a suspect class. *Id.* Since Berglund has no fundamental rights at issue here and has not demonstrated that he is part of a suspect class, the law "need only be rationally related to a legitimate governmental purpose in order to withstand" Berglund's constitutional challenges. *See Arcadia Dev. Corp. v. City of Bloomington*, 552 N.W.2d 281, 288 (Minn. App. 1996) *review denied* (Minn. Oct. 29, 1996). Furthermore, "[t]o survive a due process challenge using rational basis review, the statute must not be arbitrary and capricious." *State v. Bernard*, 859 N.W.2d 762, 773 (Minn. 2015) (quotation omitted). The challenged statute will be upheld "as long as it is a reasonable means to a permissive object." *Id*. (quotation omitted).

The district court noted that "[e]nsuring that food products offered for sale are safe for consumption is a legitimate governmental purpose." The district court found that the "regulatory scheme that gives the MDA the authority to inspect dairy producers serves to

10

ensure the integrity and safety of the state's food supply." Minnesota courts have consistently recognized Minnesota's food laws as a constitutional exercise of the state's police power. *See Hartmann*, 700 N.W.2d 449. Minnesota has a substantial government interest in regulating the health and safety of its food supply, including the sale of raw milk. *See, e.g.*, *U.S. v. Jorgensen*, 144 F.3d 550, 559 (8th Cir. 1998) (acknowledging substantial government interest in health and safety of food supply). Therefore, because the MDA enforcement and inspection statutes are rationally related to a legitimate government interest, the district court did not err in determining that the statutory scheme was constitutional and not in violation of Berglund's claimed constitutional rights.

## III. Berglund's Fourth Amendment rights were not violated.

Berglund argues that his Fourth Amendment rights were violated because the district court erred in issuing an AIO to allow a search of his farm because the sale of raw milk is not a closely regulated industry. We disagree.[2]

"[A]dministrative searches are significant intrusions upon the interest protected by the Fourth Amendment and therefore are covered by the warrant requirement." *In re Search Warrant of Columbia Heights v. Rozman*, 586 N.W.2d 273, 275 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Jan. 21, 1999). "For purposes of an administrative search . . . , probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that

---

[2] The district court issued a search warrant in this case. As such, we do not need to address Berglund's argument that a warrantless search of his farm would have been unconstitutional.

11

reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, 98 S. Ct. 1816, 1824 (1978) (footnote omitted) (quoting *Camara v. Mun. Court*, 387 U.S., 523, 538, 87 S. Ct. 1727, 1736 (1967)). In determining the validity of a search warrant, this court limits its "review to ensuring that the issuing judge had a substantial basis for concluding that probable cause existed." *State. v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006).

Berglund asserts that the district court based its issuance of the AIO on his refusal to allow a warrantless inspection, but the record does not support such a conclusion. Here, the district court determined that the MDA provided sufficient information of existing violations on Berglund's property to support a probable cause determination and the issuance of an AIO. First, the district court found that the MDA submitted evidence that Berglund refused the MDA's request to inspect the dairy on multiple occasions in violation of Minn. Stat. §§ 17.984 (general inspection authority) and 32.103 (authority to inspect dairies). Second, the district court found that the MDA provided evidence that Berglund was in violation of Minn. Stat. § 32.393 because he did not qualify for the exemption allowing for the occasional sale of unpasteurized milk products. Finally, the district court found that the fact that nearly 150 individuals claiming to purchase raw milk from Berglund signed a petition is sufficient for it to determine that Berglund does not engage in the occasional sale of milk.

This evidence satisfies the requirement to show specific evidence of an existing violation. *Marshall*, 436 U.S. at 320, 98 S. Ct. at 1824. The district court had a

12

substantial basis for concluding that the MDA met its burden of showing that probable cause existed. Therefore, the issuance of the AIO did not violate Berglund's Fourth Amendment rights.

**Affirmed.**