*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0718**

Distinctive Design Build, LLC,
Respondent,

vs.

Thomas Nelson,
Appellant,

Installed Building Solutions II, LLC,
Defendant,

BPC, Inc.,
Respondent,

Thomas Nelson,
Appellant,

vs.

Pinnacle Real Estate Group, LLC d/b/a
Keller Williams Realty Integrity Edina, et al.,
Respondents,

Premier Title Insurance Agency, Inc.,
Third-Party Defendant.

**Filed April 15, 2024
Affirmed
Reyes, Judge**

Washington County District Court
File No. 82-CV-19-2353

Courtney J. Ernston, Taryn S. Wheeler, North Star Law Group, PLLC, St. Paul, Minnesota (for respondent Distinctive Design Build, LLC)

Timothy R. Maher, Joseph D. Kantor, Guzior Armbrecht Maher, St. Paul, Minnesota (for appellant Thomas Nelson)

Lars C. Erickson, Benjamin J. Kirk, Coleman & Erickson, LLC, Eden Prairie, Minnesota (for respondent BPC, Inc.)

David J. McGee, Natalie R. Walz, McGee Walz, PA, Minneapolis, Minnesota (for respondents Pinnacle Real Estate Group, et al.)

Considered and decided by Reyes, Presiding Judge; Larson, Judge; and Ede, Judge.

## NONPRECEDENTIAL OPINION

**REYES**, Judge

On appeal from final judgment in this home-construction dispute, appellant-owner brings numerous claims challenging the district court's (1) grant of summary judgment to respondent real-estate professionals on his third-party claims for breach of fiduciary duty, negligence, vicarious liability, and unauthorized practice of law; (2) denial of his motion to amend his answer to add direct claims against respondent-subcontractor; and (3) determination that respondent-contractor's mechanic's liens were perfected. By notice of related appeal, respondent-contractor challenges the district court's denial of its motions in limine regarding damages evidence. We affirm.

## FACTS

*Pre-Litigation*

In 2017, appellant and cross-respondent Thomas Nelson (Nelson) sought to build a new house and saw a model home constructed by respondent and cross-appellant Distinctive Design Build, LLC (DDB). He connected with respondent Keith Greiman

2

(Greiman), DDB's real-estate agent who was affiliated with respondent Pinnacle Real Estate Group, LLC d/b/a Keller Williams Realty Integrity Edina (Keller). In early 2018, Nelson and DDB discussed DDB building a house for Nelson on property he owned in St. Paul Park (the property).

On February 28, 2018, Nelson, Greiman, and a representative for DDB met to draft a purchase agreement. Greiman drafted the purchase agreement and served as a dual agent for the transaction. Nelson stated that he expressed that he wanted to close within June to August 2018. The purchase agreement reflects that DDB and Nelson executed the agreement on March 6, 2018.

From mid-March to mid-April, Nelson demolished his existing home on the property. In late April, Nelson and DDB agreed to the preconstruction specifications for the new home. After growing concerned with DDB's progress, on May 19, 2018, Nelson requested a copy of the purchase agreement from Greiman and received it the next day. It showed a closing date of September 14, 2018, on the first page and a closing date of July 18, 2018, on the twelfth page. Nelson texted Greiman, "I must say I never agreed to that [September closing date] and I'm not too happy," but did not tell Greiman or DDB that he did not want to proceed. Greiman admitted that he changed the closing date to September after a phone conversation with Nelson in late April or early May, during which he told Nelson that DDB could not finish the house by July and would need an extension.

Greiman then notified Nelson that the home was scheduled to be completed in August 2018. In late June, Greiman emailed an addendum to the purchase agreement to

Nelson to change the closing date to August 31, but Nelson refused to sign it. The parties never executed the addendum and never rescheduled the closing date.

Construction began and between June 27 and July 10, 2018, the City of Cottage Grove[1] (the city) building inspector approved, among other things, the footing forms, formwork, block wall, and foundation waterproofing. Shortly after, Nelson contacted the city regarding his concerns with the footing, foundation, and block wall. The city building inspector reinspected the wall, issued a correction notice, discussed the concerns with DDB, and agreed upon a plan to correct the work. Respondent BPC, Inc. (BPC), DDB's subcontractor tasked with building the concrete footings and foundation, performed the work, and the city approved the block wall repair on August 10. However, Nelson refused to approve draw requests and claimed that the quality of the workmanship was unacceptable, and construction stopped.

In September 2018, DDB and Installed Building Solutions II, LLC (IBS), a subcontractor for DDB that performed waterproofing and other improvements for the project, filed mechanic's liens against Nelson's property.

***Litigation***

In May 2019, DDB sued Nelson and IBS. DDB alleged, in part, that Nelson had breached the purchase agreement and owed $46,322 for DDB's mechanic's lien in that amount. IBS cross-claimed against Nelson, in part, to foreclose its mechanic's lien. Nelson counterclaimed against both DDB and IBS and initiated a variety of third-party

---

[1] The City of St. Paul Park has a service agreement with the City of Cottage Grove for building-inspection services.

claims against Greiman, Keller, and respondent John K. Butler, a real-estate broker for Keller (collectively, respondent real-estate professionals).

In January 2020, DDB moved to join BPC. The district court granted DDB's motion, and DDB filed an amended complaint, alleging that BPC breached its subcontractor agreement and seeking indemnification for any claims arising from BPC's work. BPC asserted counterclaims against DDB and cross-claims against Nelson. Nelson answered BPC's cross-claims, but notably did not assert any direct claims against BPC.

In October 2020, the district court granted summary judgment to respondent real-estate professionals and dismissed Nelson's claims against them. In June 2021, the district court also granted summary judgment to IBS after IBS assigned its mechanic's lien to DDB under a settlement agreement.

*Discovery Disputes*

The district court issued its last standing scheduling order in August 2021 that set December 27, 2021, as the deadline for Nelson's disclosure of expert witnesses and opinions and to hear nondispositive motions, other than motions in limine, and set close of discovery for January 26, 2022.

Nelson disclosed architect David Campbell as an expert witness by the disclosure deadline, and on January 11, disclosed Campbell's expert report. On February 18, 2022, BPC filed a motion in limine for an order, in part, prohibiting Nelson from asserting any direct claims against BPC because a late amendment would prejudice BPC. That same day, DDB filed a similar motion in limine to prohibit Nelson from presenting evidence from Campbell or regarding damages related to the project. On February 23, Nelson

5

disclosed a Tice-Hause Design Build bid (Tice-Hause bid) of the estimated value of the home contracted for under the purchase agreement. The following day, Nelson moved to amend his answer to BPC's cross-claim to assert counterclaims, arguing that he was a third-party beneficiary to DDB and BPC's subcontractor agreement. The district court denied Nelson's motion.

DDB filed a second motion in limine in late February 2022, seeking an order to exclude the Tice-Hause bid. The district court ultimately allowed Campbell to provide testimony but excluded his written report as untimely and allowed the Tice-Hause bid to be admitted at trial.

*Jury Trial*

The case proceeded to a jury trial from August 15 to 19, 2022. On August 22, the jury returned a special verdict finding, in part, that (1) DDB and Nelson entered into a contract that both parties breached, Nelson's breach did not cause damage to DDB, and DDB's breach damaged Nelson and entitled him to $200,000 in damages and (2) DDB and BPC entered into a contract, but BPC did not breach it.

*Court Trial*

The district court held a court trial in November 2022 to decide issues related to DDB's mechanic's lien and the mechanic's lien IBS assigned to DDB. In a February 2023 order, the district court found that both DDB and IBS had perfected their mechanic's liens and determined that DDB was entitled to foreclosure of both mechanic's liens, plus interest, for an amount totaling $58,379.07. The district court offset the mechanic's lien amounts

against Nelson's contract damages and ordered that judgment against DDB be entered in favor of Nelson for $141,620.93.

This appeal follows.

## DECISION

**I.   The district court properly granted summary judgment to respondent real-estate professionals.**

Nelson argues that the district court erred by granting summary judgment to respondent real-estate professionals on his claims of breach of fiduciary duty, negligence,[2] unauthorized practice of law, and vicarious liability.  We disagree.

"[Appellate courts] review a district court's summary judgment decision de novo . . . [to] determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp.*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted).  "When summary judgment is granted based on application of the law to undisputed facts, . . . the result is a legal conclusion that we review de novo." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008).  Mere speculation, absent "some concrete evidence, is not enough to avoid summary judgment." *Id.* (Quotation omitted.)

Nelson argues that the district court inappropriately granted summary judgment because Greiman breached his fiduciary duty to Nelson and engaged in the unauthorized

---

[2] Although Nelson's brief heading refers to breach of fiduciary duty *and* negligence, the body of Nelson's argument relates solely to his breach of fiduciary duty claim and Nelson has therefore waived his negligence argument on appeal. *Zimmerman v. Safeco Ins. Co. of Am.*, 593 N.W.2d 248, 251 (Minn. App. 1999) ("[I]ssues not raised or argued in an appellant's brief are waived . . . ."), *aff'd*, 605 N.W.2d 727 (Minn. 2000).

7

practice of law by "drafting the [purchase agreement]" and altering the closing date, which disrupted Nelson and DDB's relationship and resulted in DDB's failure to complete Nelson's home.[3]

The district court determined that Nelson did not show that Greiman's drafting of the purchase agreement or alleged breach by later changing the closing date caused DDB's failure to complete construction of Nelson's house, and further determined that filling in blanks on a boilerplate form was not the practice of law.

"A breach of fiduciary duty claim consists of four elements: duty, breach, causation, and damages." *Hansen v. U.S. Bank Nat. Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). "[Proximate c]ause exists when[,] but for the [the actor's breach], the loss would not have occurred; or, alternatively, the loss must result directly from the tortious conduct." *Raske v. Gavin*, 438 N.W.2d 704, 706 (Minn. App. 1989), *rev. denied* (Minn. June 21, 1989). Although causation is normally a question of fact for the jury, "when reasonable minds could reach only one conclusion, the existence of proximate cause is a question of law." *Canada ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 506 (Minn. 1997).

Nelson's claim for unauthorized practice of law was based on Minn. Stat. § 481.02 (2022), subd. 1, which prohibits persons other than licensed and admitted Minnesota attorneys from engaging in the unauthorized practice of law. However, an exception allows

---

[3] In his principal brief, Nelson argues that Greiman's change of the closing date "called the validity of the entire contract into question." However, Nelson did not fully brief this issue or make this argument before the district court to oppose summary judgment. Therefore, the issue is not properly before us, and we decline to address it. *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018) ("Ordinarily, [appellate courts do] not consider an issue not decided by the district court.")

"a real estate salesperson [to draw or assist in drawing] papers incident to the sale, trade, lease, or loan of property." Minn. Stat. § 481.02, subd. 3a. A person injured by a violation "may bring a civil action and recover damages, together with costs and disbursements, . . . and receive other equitable relief as determined by the court." Minn. Stat. § 8.31, subd. 3a (2022); Minn. Stat. § 481.02, subd. 8. Causation of the alleged injury is a necessary element of an action under Minn. Stat. § 8.31, subd. 3a. *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001).

Assuming without deciding that Greiman owed and breached duties to Nelson, we agree with the district court that Nelson failed to present evidence sufficient to establish causation for either claim. Nelson does not appear to dispute that he had a valid contract with DDB, or that Greiman changed the closing date "after a lengthy phone conversation with Nelson in late April or early May," that took place after Nelson had already torn down his existing home. Greiman testified that he changed the closing date to September after DDB told him that they would not be able to complete the home by the July closing date. Nelson did not present evidence sufficient to show that, but for Greiman's conduct, DDB would have completed the project and Nelson's injury would not have occurred. Nelson also did not present evidence sufficient to show that Greiman's conduct in drafting the purchase agreement, rather than DDB's construction timeline, caused Nelson's injury. Without causation, the district court did not err by granting summary judgment to respondent real-estate professionals. Further, because no "actionable conduct of another" exists here, *Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 708

9

(Minn. 2013) (quotation and emphasis omitted), Nelson's vicarious-liability claims against Greiman's broker Butler and Greiman's employer Keller also fail.[4]

## II. The district court did not abuse its discretion by denying Nelson's motion to amend his answer to add claims against BPC.

Nelson argues that the district court abused its discretion by denying his motion to amend as untimely and by disregarding Minn. R. Civ. P. 13.06 and 15.02 when his claims were identical or substantially similar to DDB's claims against BPC and would not have prejudiced BPC or required further discovery. We are not persuaded.

A district court "has wide discretion to grant or deny an amendment [to a complaint]." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). Although "[a] party may amend a pleading once as a matter of course" within a specified timeframe, "[o]therwise a party may amend . . . only by leave of court or by written consent of the adverse party." Minn. R. Civ. P. 15.01. Unless it would prejudice the other party, *Fabio*, 504 N.W.2d at 761, "leave [to amend] shall be freely given when justice so requires," Minn. R. Civ. P. 15.01. Likewise, if a party fails to make a counterclaim "through oversight, inadvertence, or excusable neglect" a party may amend to assert the counterclaim with leave of the court. Minn. R. Civ. P. 13.06. A court may consider various factors, such as the stage of the proceedings or whether substantial delay will result. *Envall v. Indep. Sch. Dist. No. 704*, 399 N.W.2d 593, 597 (Minn. App. 1987), *rev. denied* (Minn. Mar. 25, 1987). When a motion to amend a pleading would also modify a scheduling order,

---

[4] In his brief, Nelson also raised the issues of indemnity and contribution, but conceded that those issues are moot on appeal.

a movant must show good cause and act with due diligence in attempting to amend. Minn. R. Civ. P. 16.02; *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 896 N.W.2d 115, 127 (Minn. App. 2017), *aff'd*, 913 N.W.2d 687 (Minn. 2018).

The district court denied Nelson's motion to amend because (1) his motion was untimely; (2) the amendment would require reopening discovery and another continuance of trial; and (3) he had failed to demonstrate good cause.

*Staffing* is strikingly similar to this case and guides our analysis here. In *Staffing*, the district court denied Staffing's motion to amend after determining that Staffing failed to show "good cause" and that additional but necessary discovery would delay the set trial dates. 896 N.W.2d at 127. We concluded that the district court did not abuse its discretion because Staffing had moved to amend five months after the scheduled deadline despite having notice of the claim it sought to add since the case's inception. *Id.*

Like *Staffing*, here Nelson filed his motion to amend two months after the scheduled deadline and, therefore, had to show good cause. Although Nelson received the subcontractor agreement years prior and knew that BPC was the foundation contractor, his primary argument to show "good cause" was that he had not taken notice of the agreement's significance. Further, Nelson filed his motion to amend *only after* BPC filed a motion in limine requesting that the district court prohibit Nelson from asserting direct claims against it.

Allowing the amendment also would have required the district court to reopen discovery and again delay trial. BPC entered the lawsuit only after Nelson's deposition and did not pursue additional discovery against Nelson because he had made no claims

11

against BPC. Finally, Nelson's reliance on Minn. R. Civ. P. 15.02 is misguided because BPC never expressly or impliedly consented to litigating these issues with Nelson. We discern no abuse of discretion by the district court by denying Nelson's motion.

### III. The district court did not err by determining that DDB and IBS properly perfected their mechanic's liens.

Nelson alleges that, by ruling in favor of DDB after the court trial, the district court "made numerous errors" and strayed outside the record and evidence in an apparently "deliberate effort to secure the victory for DDB." We are not convinced.

Appellate courts "review a district court's evidentiary rulings . . . for an abuse of discretion." *Doe 76C v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012). "On appeal from judgment following a court trial, this court reviews whether the district court's findings were clearly erroneous and whether the district court erred as a matter of law." *In re Distrib. of Att'y Fees between Stowman Law Firm, & Lori Peterson Law Firm*, 855 N.W.2d 760, 761 (Minn. App. 2014), *aff'd*, 870 N.W.2d 755 (Minn. 2015). "A finding is clearly erroneous if we are left with the definite and firm conviction that a mistake has been made." *Id.* (Quotation omitted). We review legal issues de novo. *Id.*

### A. The district court properly considered the jury verdict.

Nelson first argues that, because the jury awarded no damages to DDB, the district court erred by granting DDB the value of its liens. We are not persuaded.

While "factual findings that are common to both claims at law and claims for equitable relief are binding upon the district court," *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617 (Minn. 2007), "[i]ssues of fact that are not submitted to the jury on the

12

special verdict form are left to the district court to decide," *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 618 (Minn. 2008). A special-verdict form must be "liberally construed to give effect to the intention of the jury" and appellate courts should "harmonize all findings if at all possible." *Id.* (Quotation omitted.)

In its order, the district court adopted the special-verdict form and the jury's findings of fact. Notably, the jury made no findings regarding the validity of DDB's mechanic's liens. *C.f. id.* at 620 (concluding that district court finding that employees worked overtime was inconsistent with jury special-verdict form indicating employees were not entitled to damages for overtime hours worked). Further, although the jury heard testimony about the mechanic's liens, they were not referenced in the jury instructions regarding damages. We conclude that the district court's award of the mechanic's lien amounts to DDB was in harmony with the jury's special verdict.

**B. The district court did not clearly err by finding that DDB and IBS perfected their mechanic's liens.**

**1. DDB timely served its prelien notice on Nelson.**

Nelson argues that, as a matter of first impression, this court should construe Minn. Stat. § 514.011 (2022) to require that a contractor provide a copy of a written contract containing the prelien notice within ten days of execution of the contract. We decline Nelson's invitation.

Statutory interpretation is a legal question that appellate courts review de novo. *Helmberger v. Johnson Controls, Inc.*, 839 N.W.2d 527, 531 (Minn. 2013). We apply the plain meaning of a statute when it is unambiguous. *Id.* Prior to filing a lien:

13

> Every person who enters into a contract with the owner for the
> improvement of real property and who has contracted or will
> contract with any subcontractors . . . to provide labor, skill or
> materials for the improvement *shall include in any written
> contract with the owner the notice required in this subdivision
> and shall provide the owner with a copy of the written contract*.

Minn. Stat. § 514.011, subd. 1 (emphasis added). If the contract is *not written*, then the prelien notice must be "prepared separately and delivered [to the owner] within ten days after the work of improvement is agreed upon." *Id.*

Here, the parties had a written contract. The plain language of Minn. Stat. § 514.011, subd. 1, does not require a contractor to provide a copy of the written contract to the owner within a specified timeframe. Rather, the notice must be included within the written contract. Nelson does not dispute that the written purchase agreement contained the notice outlined under Minn. Stat. § 514.011, subd. 1, or that he eventually received a copy of the fully executed purchase agreement from DDB. We conclude that the district court did not err by finding that DDB timely served its prelien notice on Nelson.

> **2.    The district court did not clearly err by finding that DDB timely filed its mechanic's lien statement.**

Nelson argues that the district court clearly erred by finding that DDB timely filed its mechanic's lien statement because the statement was not a certified copy and the page containing recording information was excluded as hearsay.

A mechanic's lien "ceases at the end of 120 days after" the last day of work is completed unless "a statement of the claim is filed" and recorded in the appropriate county and "a copy . . . is served personally or by certified mail on the owner or the owner's authorized agent." Minn. Stat. § 514.08, subd. 1 (2022). "Mechanic's lien laws are strictly

14

construed as to the question [of] whether a lien attaches, but are construed liberally after the lien has been created." *Dolder v. Griffin*, 323 N.W.2d 773, 780 (Minn. 1982).

"[A]uthentication or identification" is required for evidence to be admissible. Minn. R. Evid. 901(a). Authentication or identification "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* "The contents of . . . a document authorized to be recorded or filed and actually recorded or filed . . . if otherwise admissible, may be proved by copy . . . testified to be correct by a witness who has compared it with the original." Minn. R. Evid. 1005.

The district court found that DDB perfected its lien because (1) the purchase agreement contained the required prelien notice and (2) the lien statement date and signature indicated that it was recorded and served within 120 days of DDB ceasing work on the property. The record supports the district court's finding.

First, as established above, DDB complied with the statutory prelien-notice requirements. Second, even without the recording information, the lien statement itself corroborates that it was filed and served on Nelson within the required timeframe. Neither party disputes that work on the property ceased in early to mid-August 2018. DDB's lien statement is dated September 10, 2018, and was signed by an owner of DDB and notarized on September 12, 2018. By his signature, DDB's owner swore that a copy of the mechanic's lien statement had been served by certified mail on Nelson. Third, DDB's owner testified that exhibit 107 was a true and correct copy of the mechanic's lien statement that was filed on Nelson's property. We discern no error in the district court's findings.

15

### 3. The district court did not clearly err by finding that IBS timely served its mechanic's lien statement.

Nelson contends that the district court abused its discretion by taking judicial notice of the declaration of IBS's attorney and clearly erred by finding that IBS had timely served its mechanic's lien statement on Nelson.[5]

We need not decide whether the district court abused its discretion by taking judicial notice of the declaration because, even without the declaration, the district court's finding that IBS timely served its lien statement on Nelson is not clearly erroneous. IBS's mechanic's lien statement, exhibit 11, states that the prelien notice was provided to Nelson and shows that IBS properly recorded the lien statement within the statutory timeframe. IBS acknowledges in exhibit 11 that the statement had to be served personally or by certified mail on Nelson within 120 days of IBS ceasing work on the property. Further, it is undisputed that IBS assigned its lien to DDB as part of a settlement agreement, which is inconsistent with the lien being unperfected. Finally, Nelson has provided no evidence to support that IBS did not timely serve its mechanic's lien statement on him. The district court did not err in this finding.

---

[5] Nelson also maintains that the district court improperly denied Nelson's request to be heard on the matter of judicial notice. Although Minn. R. Evid. 201 provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed," Nelson has not shown prejudice here. In response to his request to be heard, the district court did not deny his request, but rather instructed him that he should file a motion for amended findings. Nelson did not subsequently file a motion.

**4.** **The district court did not abuse its discretion by admitting IBS's mechanic's lien assignment to DDB.**

Nelson argues that the district court abused its discretion by admitting an uncertified copy of IBS's mechanic's lien assignment to DDB under the business-records exception, Minn. R. Evid. 803(6), because the recording information on the first page requires foundation.

Even if we assume that the first page of the mechanic's lien assignment is not admissible under the business-records exception, the record still supports the district court's decision to admit the remainder of the exhibit because an IBS employee who had seen the original provided testimony that the exhibit was correct. *See* Minn. R. Evid. 1005 (providing that the contents of a recorded document can be "testified to be correct by a witness who has compared it with the original"). IBS's employee testified regarding the assignment and confirmed that exhibit 11 was an IBS mechanic's lien statement for Nelson's property and that exhibit 12 was the assignment of that lien. The employee confirmed that he had seen the assignment before and that it was a record kept in the ordinary course of IBS's business. DDB's owner confirmed that an IBS mechanic's lien for the same amount as that listed on exhibit 12 was assigned to DDB and that DDB "owned it." The record also shows that the assignment was part of DDB and IBS's settlement agreement, and Nelson's own submissions to the district court indicate that he did not dispute that IBS assigned its lien to DDB. Moreover, the district court only approved foreclosure of the lien in the amount that the IBS employee testified to, not the entire

17

amount reflected in exhibit 12, because IBS's employee could not explain the discrepancy. The district court did not abuse its discretion by admitting exhibit 12.

**5. The district court did not abuse its discretion by admitting exhibits 102 and 103.**

Nelson contends that exhibits 102 and 103, draw requests submitted by DDB for payment of its subcontractors, were inadmissible under the business-records exception because they both included hearsay. We disagree.

For evidence to qualify for the business-record exception, three requirements must be met: (1) "the evidence was kept in the course of a regularly conducted business activity," (2) "it was the regular practice of that business activity to make the memorandum, report, record, or data compilation," and (3) "the foundation for [the] evidence is shown by the custodian or other qualified witness." *Nat'l Tea Co. v. Tyler Refrigeration Co.*, 339 N.W.2d 59, 61 (Minn. 1983); Minn. R. Evid. 803(6). Additionally, "the source of information or the method or circumstances of preparation [must not] indicate lack of trustworthiness." Minn. R. Evid. 803(6).

Here, DDB's owner testified that the draw requests were kept in the regular course of DDB's business, the requests were made as a record of a regular practice of DDB's business, and exhibit 102 was supported by the attached subcontractor invoices. The district court did not abuse its discretion by admitting exhibits 102 and 103.

18

### 6. The quality of the work.

Finally, Nelson argues that the district court never should have reached the issue of the quality of work provided by DDB and IBS, but nevertheless failed to make appropriate factual findings under Minn. R. Civ. P. 52.01.

A party's right to deductions from a lien amount for defects due to faulty performance of the contract is "one of recoupment, not counterclaim," and, if made, appellate courts will sustain a district court's findings of "defects and resulting damage," or lack thereof, so long as the "findings have reasonable support in the evidence." *Knutson v. Lasher*, 18 N.W.2d 688, 692-94 (1945); *see also H.P. Droher & Sons v. Toushin*, 85 N.W.2d 273, 278-79 (1957).

In its order, the district court found that Nelson's "briefing offers no meaningful argument regarding the quality of the work" and granted DDB's full mechanic's lien amount and IBS's partial mechanic's lien amount, plus interest, to DDB. The record supports the district court's decision. Although the record reflects that DDB's workmanship required correction, it also supports that Nelson's conduct hindered correction. Further, testimony supported that both DDB's and IBS's corrected work passed inspection, that minimal repairs would have been needed to repair the foundation, and that DDB and IBS were willing to perform the work.

19

**IV.** **The district court's refusal to exclude Nelson's expert testimony did not prejudice DDB.**[6]

In its cross-appeal, DDB argues that the district court abused its discretion by admitting Campbell's testimony because appellant's disclosure of Campbell was "obviously untimely" and prejudicial to DDB. We are unpersuaded.

The admissibility of an expert's opinion is within the district court's discretion, and appellate courts will not reverse absent an abuse of discretion that prejudices the objecting party. *Bohach v. Thompson*, 239 N.W.2d 764, 766 (Minn. 1976). Especially concerning expert-witness testimony, rules of discovery aim "to encourage the exchange of relevant information by the parties prior to trial and to discourage and prevent unjust surprise and prejudice at trial." *Gale v. Cnty. of Hennepin*, 609 N.W.2d 887, 891 (Minn. 2000).

In its principal brief, DDB fails to explain how it was prejudiced by Campbell's testimony. Even if it had, the record supports that admitting Campbell's testimony was within the district court's discretion. Nelson disclosed Campbell as an expert witness by the deadline set out in the standing scheduling order. Campbell based his opinion regarding the constructed foundation, which was already at issue in the case, on photos and reports that were available to all parties, not from observing the foundation firsthand. Further, the district court excluded Campbell's written report as untimely.

---

[6] Although DDB's principal brief mentions Campbell's expert report, the report itself was not admitted at trial. As such, we construe DDB's argument as only challenging the admission of Campbell's expert testimony.

**V.** **The district court's admission of the Tice-Hause bid did not prejudice DDB.**

DDB argues that the district court abused its discretion by admitting the Tice-Hause bid because (1) Nelson is not entitled to damages for work that was not performed or paid for; (2) reconstruction of Nelson's home would constitute economic waste; (3) costs submitted by Nelson are not in accordance with the original contract; and (4) Nelson is not entitled to damages for work properly performed by DDB but destroyed by Nelson, who subsequently removed the foundation. We disagree.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Minn. R. Evid. 403. In construction-defect cases:

> The preferred measure of damage . . . is to take either the cost of reconstruction in accordance with the contract, if this is possible without unreasonable economic waste, or the difference in the value of the building as contracted for and the value as actually built, if reconstruction would constitute unreasonable waste.

*N. Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 211 N.W.2d 159, 165 (1973). However, "[i]n a contract for construction of a home, an owner who unreasonably fails to allow the contractor to complete the project excuses the contractor's performance and breaches the contract." *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984).

The jury awarded Nelson the "cost of completion" in an amount of $200,000. This amount is more than DDB claims Nelson was entitled to based on the 2018 purchase agreement and work DDB already performed. However, this amount is far less than the Tice-Hause bid amount of $397,750 and less than the $218,300 agreed to by Nelson and

21

DDB to construct the home. DDB has failed to show how the admission of the Tice-Hause bid prejudiced DDB with respect to the jury award to Nelson. DDB argues that "[t]he appropriate measure of damages should have been the cost to **re**construct the foundation, and the cost of completion." Although the Tice-Hause bid amount of $397,750 differed significantly from the price of $218,300 agreed to by DDB and Nelson for the home construction, the jury heard testimony regarding the differences between the estimate and the home DDB and Nelson contracted for. Further, DDB has not alleged that the district court's jury instructions regarding damages were erroneous, or even how the jury used the Tice-Hause bid as the measure of damages. DDB's claim fails.

**Affirmed.**